IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DE WITT LAMAR LONG, #A1024631, | CIVIL NO. 21-00205 HG-RT |
| Plaintiff, | ORDER DISMISSING COMPLAINT IN PART WITH LEAVE TO AMEND |
| vs. | |
| CHAPLAIN CHARLES NOLAND, JR.; CORRECTIONAL OFFICER HAMADA; SERGEANT LEAIALAIMATAFAO; CHIEF OF SECURITY LYLE ANTONIO; WARDEN SCOTT O. HARRINGTON, | |
| Defendants. | |

## ORDER DISMISSING COMPLAINT IN PART WITH LEAVE TO AMEND

Before the Court is Plaintiff De Witt Lamar Long's ("Long") prisoner civil

rights complaint ("Complaint") brought pursuant to 42 U.S.C. § 1983. ECF No. 1.

Long is a practicing Muslim who alleges that prison officials[1] at the Halawa

---

[1] Long names in their individual capacities Chaplain Charles Noland, Jr., Correctional Officer ("CO") Hamada, Sergeant ("Sgt.") Leaialaimatafao, Chief of Security ("COS") Lyle Antonio, and Warden Scott O. Harrington. ECF No. 1 at 1–3.

Correctional Facility ("HCF")[2] violated his First Amendment right to free exercise of religion and his Fourteenth Amendment right to equal protection in 2019. *Id.* at 7–35. Long claims that Defendants did not purchase and provide him with religious items, denied him religious meals on two occasions, and cancelled Islamic services on Fridays during Ramadan. *Id.* For the following reasons, the Complaint is DISMISSED in part with leave granted to amend pursuant to 28 U.S.C. §§ 1915(e) and 1915A(a). Long may file an amended pleading on or before Monday, July 12, 2021. In the alternative, Long may inform the Court on or before Monday, July 12, 2021, that he will proceed with his First Amendment claim in Count IV against COS Antonio.

## I. **STATUTORY SCREENING**

The Court is required to conduct a pre-Answer screening of any case in which a prisoner seeks redress from a governmental entity, or officer or employee of a governmental entity, or in which a plaintiff proceeds in forma pauperis. 28 U.S.C. §§ 1915(e)(2), 1915A(a). During this screening, the Court must dismiss any complaint or portion thereof that is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks damages from defendants who are immune from suit. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b); *Andrews v.*

---

[2]Long is currently incarcerated at the Saguaro Correctional Center ("SCC") in Eloy, Arizona.

*Cervantes*, 493 F.3d 1047, 1055 (9th Cir. 2007) (noting that 28 U.S.C.

§§ 1915(e)(2)(B) and 1915A(b) "are directed at screening out meritless suits early

on"); *see also Harris v. Harris*, 935 F.3d 670, 675 (9th Cir. 2019) (describing

screening under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a)–(b)).

 In determining whether a complaint or any portion thereof should be

dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B) or

1915A(b), the Court applies the same standard as that under Federal Rule of Civil

Procedure 12(b)(6) ("Rule 12").  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th

Cir. 2015) (per curiam).  Under this standard, a complaint must "contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its

face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and

citation omitted); *Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 642 (9th Cir. 2018)

(per curiam).  A claim is "plausible" when the facts alleged support a reasonable

inference that the plaintiff is entitled to relief from a specific defendant for specific

misconduct.  *See Iqbal*, 556 U.S. at 678.  Although this plausibility standard does

not equate to a "probability requirement," "it asks for more than sheer possibility

that a defendant has acted unlawfully."  *Id.*; *see also Dent v. Nat'l Football

League*, 968 F.3d 1126, 1130 (9th Cir. 2020) (same).

 Rule 12 is read in conjunction with Federal Rule of Civil Procedure 8(a)

("Rule 8").  Rule 8 "requires only 'a short and plain statement of the claim

showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Although Rule 8 does not require detailed factual allegations, "it demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citation omitted).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citation omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted) (brackets in original); *see also Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016) (same).

The Court construes pro se litigants' pleadings liberally and affords them the benefit of any doubt.  *See Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 642 (9th Cir. 2018) (per curiam).  Liberal construction of a pro se civil rights complaint, however, "may not supply essential elements of the claim that were not initially pled." *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014) (internal quotation marks and citation omitted).  Nor do district court judges have an "obligation to act as counsel or paralegal to *pro se* litigants." *Pliler v. Ford*, 42 U.S. 225, 231 (2004); *see also Eblacas v. Agbulos*, Civ. No. 18-00376 DKW-RLP, 2018 WL 5621954, at *2 (D. Haw. Oct. 30, 2018) ("While the court construes [the

4

plaintiff's] allegations liberally and affords him the benefit of any doubt, it will not speculate about [the plaintiff's] claims, and has no obligation to act as counsel or paralegal to pro se litigants." (internal quotation marks and citation omitted)).

The Court cannot dismiss a pro se litigant's pleading without leave to amend unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment. *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam). Before dismissing a pro se complaint, the Court must provide the litigant with notice of the deficiencies in his complaint "to ensure that the litigant uses the opportunity to amend effectively." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (internal quotation marks and citations omitted).

## II. <u>LONG'S CLAIMS</u>[3]

After arriving at the HCF in March 2019, ECF No. 1 at 12, Long asked Chaplain Noland to add his name to three lists of prisoners who (1) "observe the Islamic, Muslim faith," *id.* at 10; (2) are permitted to attend "Jum'ah"[4] services, *id.*

---

[3]Long's factual allegations are accepted as true for purposes of screening. *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

[4]"Jum'ah" is "Friday of the Muslim week and the special noon service on Friday that all adult, male, free Muslims are obliged to attend." Britannica, Jum'ah, https://www.britannica.com/topic/jumah (last visited June 3, 2021).

at 11; and (3) are provided a "Halal/Kosher"[5] diet, *id.* at 11, 16.  Long's name was added to the three lists.  *Id.* at 16, 26.  Long also asked Chaplain Noland to provide him with the "Holy Qur'an,"[6] a prayer rug, a kufi,[7] and prayer oils.  *Id.* at 11.

Long alleges in Count I that Chaplain Noland did not provide him with a Qur'an, a prayer rug, a kufi, prayer oils, or "any other Islamic, Muslim literature or materials[.]"  *Id.*  Chaplain Noland told Long that he did not have these items.  *Id.* at 12.  Long claims that there was no other way for him to obtain the items.  *Id.*

Long alleges in Count II that CO Hamada refused to provide him with a "Halal/Kosher" meal on May 2, 2019.  *Id.* at 15–19.  On that day, Long noticed that his food tray was "not as [it] should be," and he asked CO Hamada to "resolve the issue."[8]  *Id.* at 17.  CO Hamada allegedly became "hostile and dismissive" and told Long to "take it or leave it."  *Id.*  When Long asked to speak with the duty cook, as he had been previously told to do if there was an issue with his food, CO

---

[5]"Halal" foods are those sanctioned by Islamic law.  Merriam-Webster, Halal, https://www.merriam-webster.com/dictionary/halal (last visited June 3, 2021).

[6]The Qur'an is the sacred scripture of Islam.  Britannica, Qur'an, https://www.britannica.com/topic/Quran (last visited June 3, 2021).

[7]A "kufi" is a "close-fitting brimless cylindrical or round hat."  Merriam-Webster Dictionary, Kufi, https://www.merriam-webster.com/dictionary/kufi (last visited June 3, 2021).

[8]Long does not say what was allegedly wrong with his tray of food or what he asked CO Hamada to do to fix it.

Hamada allegedly refused Long's request. *Id.* at 17–18. According to Long, he was forced to wait approximately thirteen hours between meals. *Id.* at 18.

Long alleges in Count III that Sgt. Leaialaimatafao failed to provide him with his "Ramadan, Halal/Kosher" meal on May 7, 2019.[9] *Id.* at 20–24. During Ramadan, Long's meals were ordinarily labeled with his name and "Ramadan Kosher," and they were sealed in plastic wrap. *Id.* at 21. Because Long could not eat between dawn and dusk during Ramadan, prison officials usually gave him a double portion of food. *Id.* On May 7, 2019, however, Long received a single portion of food, that was not labeled with his name or "Ramadan Kosher," and that was not sealed in plastic wrap. *Id.* When Long spoke to Sgt. Leaialaimatafao about his food, she allegedly said "that there was nothing she could do about it." *Id.* at 22. Long asked Sgt. Leaialaimatafao to call the kitchen, but she refused. *Id.* When Long asked Sgt. Leaialaimatafao to call the lieutenant on duty, as he had been previously instructed to do, Sgt. Leaialaimatafao allegedly said that "she wasn't gonna bother him with this." *Id.* at 23. As a result, Long had to wait approximately twenty-four hours between meals. *Id.*

---

[9]Ramadan is "the ninth month of the Islamic year observed as sacred with fasting practiced daily from dawn to sunset." Merriam-Webster Dictionary, Ramadan, https://www.merriam-webster.com/dictionary/Ramadan (last visited June 3, 2021). In 2019, Ramadan began the evening of May 5, and it ended the evening of June 3.

Long alleges in Count IV that Jum'ah services were not available at the HCF during the month of Ramadan in 2019. *Id.* at 25–29. When Long inquired why the services were unavailable, a correctional officer directed Long's attention to a memorandum on the wall from COS Antonio stating that no Jum'ah services were being held. *Id.* at 27. Long claims that, during the same period, Christian services were held. *Id.* at 27-28.

Long alleges in Count V that he was "denied the opportunity to practice and observe many of his religious requirements." *Id.* at 33. Long claims that Warden Harrington was aware of the alleged violations, because he had responded to Long's "numerous grievances," but he "failed to remedy the wrongs and violations." *Id.*

Long seeks "[c]ompensatory, consequential, special," and special damages, attorney's fees and costs, and interest. *Id.* at 36.

## III. <u>DISCUSSION</u>

### A.   **Legal Framework for Claims Under 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege:  (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Park v. City & County of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020). Section 1983 requires a

connection or link between a defendant's actions and the plaintiff's alleged deprivation.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008) ("In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury." (citation omitted)).  "'A person "subjects" another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"  *Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

## B.  First Amendment

"Inmates retain the protections afforded by the First Amendment, 'including its directive that no law shall prohibit the free exercise of religion.'"  *Shakur v Schriro*, 514 F.3d 878, 883–84 (9th Cir. 2008) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)).  To implicate the Free Exercise Clause, a prisoner must allege that the belief at issue is both "sincerely held" and "rooted in religious belief."  *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015) (internal quotation marks and citation omitted).  Additionally, a prisoner must allege that prison officials substantially burdened the practice of his religion.  *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015).  "A substantial burden ... place[s]

more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs."  *Id.* at 1031–32 (citation omitted).

A regulation or practice that burdens an inmate's First Amendment rights may be upheld if it is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987).  This determination requires courts to consider:  (1) whether there is a valid, rational connection between the regulation and the legitimate governmental interest; (2) whether there are alternative means of exercising the right that remain open to inmates; (3) the impact accommodation of the right will have on guards and other inmates, and on the allocation of prison resources; and (4) the absence of ready alternatives.  *Id.* at 90.

### 1. *Religious items*

Long alleges in Count I that Chaplain Noland violated the First Amendment because he did not provide Long with a Qur'an, a prayer rug, a kufi, prayer oils, or "any other Islamic, Muslim literature or materials[.]"  ECF No. 1 at 11.

Long fails to state a plausible claim for relief because the First Amendment does not require prison officials to purchase religious items for inmates.  *See Frank v. Terrell*, 858 F.2d 1090, 1090 (5th Cir. 1988) (per curiam) ("'[T]here cannot possibly be any constitutional or legal requirement that the government provide

materials for every religion and sect practiced in this diverse country[.]" (quoting *Cruz v. Beto*, 405 U.S. 319, 323 (1972) (Burger, C.J., concurring)); *see also Ward v. Walsh*, 1 F.3d 873, 880 (9th Cir. 1993) (concluding that prison officials did not have an affirmative obligation to provide inmate with clothing made with only one fiber); *Indreland v. Yellowstone Cnty. Bd. of Comm'rs*, 693 F. Supp. 2d 1230, 1242 (D. Mont. 2010) ("The Detention Facility was not required to purchase religious materials . . . at their own expense."); *Florer v. Peck*, No. CV-05-5039-EFS, 2007 WL 9717443, at *4 (E.D. Wash. July 31, 2007) ("Plaintiff has not cited to any authority creating an affirmative obligation on [prison officials] to provide religious material.").

Although Long claims that he had "no way" to obtain the items himself, he does not allege that the items were banned at the HCF. Nor does he allege that Chaplain Noland prohibited him from obtaining the items. *Cf. Cooper v. Pate*, 378 U.S. 546, 546 (1964) (per curiam) (concluding that complaint stated a claim where prisoner alleged that he was denied permission to purchase certain religious publications). Long's claim in Count I against Chaplain Noland is DISMISSED with leave to amend.

### 2. *Religious meals*

Long alleges in Count II that CO Hamada violated the First Amendment by denying him a "Halal/Kosher" meal on May 2, 2019.[10]  ECF No. 1 at 15–19.  In Count III, Long alleges that Sgt. Leaialaimatafao violated the First Amendment by separately denying him a "Halal/Kosher" meal on May 7, 2019.  *Id.* at 20–24.

Inmates "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion."  *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987); *see also Thomas v. Baca*, 827 F. App'x 777, 778 (9th Cir. 2020) (same).  As the Ninth Circuit has explained, however, "relatively short-term and sporadic" intrusions do not substantially burden the free exercise of religion.  *Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998).

Long fails to state a plausible claim for relief against either CO Hamada or Sgt. Leaialaimatafao because he does not plausibly allege that missing a meal on two separate days substantially burdened his practice of religion.  To the extent Long claims that CO Hamada denied him a religious meal on May 2, 2019, "the denial of . . . a religious meal, on a single isolated occasion does not constitute a 'substantial burden' and thus does not violate the First Amendment."  *Johnson v.*

---

[10]While Long claims that he previously experienced "issues" with his food being served with utensils that had touched pork, he does not allege that CO Hamada was involved with or even aware of these earlier incidents.  ECF No. 1 at 17.

*Scott*, No. CV 21-2543-AB(E), 2021 WL 1664175, at *3 (C.D. Cal. Apr. 28, 2021); *see also Combs v. Washington*, 660 F. App'x 515, 517 (9th Cir. 2016) (concluding that "sporadic mistakes in . . . food preparation . . . did not rise to the level of a constitutional violation").   Likewise, Long fails to state a claim against Sgt. Leaialaimatafao based on a separate incident during Ramadan, on May 7, 2019.  *See Pouncil v. Sherman*, No. 1:17-cv-00547-AWI-BAM (PC), 2018 WL 646105, at *3 (E.D. Cal. Jan. 31, 2018) (concluding prisoner failed to state a claim based on alleged denial of meals on one night of Ramadan); *see also Moore v. Katavich*, No. 1:15-cv-01317-BAM-PC, 2015 WL 13237071, at *2 (E.D. Cal. Dec. 18, 2015) ("Brief, sporadic food-delivery problems are insufficient to establish a substantial burden on plaintiff's free exercise of religion.").

Long does not allege that he was denied meals as a matter of course.  Nor does he allege that Sgt. Leaialaimatafao was aware of the May 2, 2019 incident involving CO Hamada.  Long's claims against CO Hamada in Count II and Sgt. Leaialaimatafao in Count III are DISMISSED with leave to amend.

### 3.  *Religious services*

Long alleges in Count IV that COS Antonio violated the First Amendment by cancelling Jum'ah services during Ramadan.  ECF No. 1 at 25–29.

The Supreme Court has said that "the 'exercise of religion' often involves not only belief and profession but the performance of . . . physical acts[,] [for

example,] assembling with others for a worship service[.]"  *Employment Div.,*

*Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 877 (1990).

According to Long, "Friday (Jum'ah) is the most important day of worship

in Islam."  ECF No. 1 at 25.  Long describes Jum'ah as "the weekly occasion

earmarked by God for Muslims to express their collective devotion."  *Id.*  Long

says that Jum'ah "is obligatory for all Muslim inmates[.]"  *Id.* at 9.

Long claims that COS Antonio cancelled Jum'ah services during the entire

month of Ramadan, and that this prevented him "from engaging in a sincerely held

religious practice in accordance with his sincerely held religious beliefs."  *Id.* at

26–28.  Long states a plausible free exercise claim in Count IV against COS

Antonio that may proceed.  *See Henderson v. Muniz*, No. 14-cv-01857-JST, 2017

WL 6885393, at *9–10 (N.D. Cal. Nov. 28, 2017) (denying summary judgment on

First Amendment claim where prisoner alleged that he was denied "Jumu'ah

prayers").

### 4.  Supervisory liability

Long alleges in Count V that Warden Harrington violated the First

Amendment.  ECF No. 1 at 30 –35.

There is no *respondeat superior* liability under 42 U.S.C. § 1983.  *Vazquez*

*v. County of Kern*, 949 F.3d 1153, 1166 (9th Cir. 2020).  "Because vicarious

liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each

14

Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "A supervisory official may be held liable under § 1983 only if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018) (internal quotation marks and citations omitted).

"The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018) (internal quotation marks and citations omitted). "Thus, a supervisor may be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (internal quotation marks and citation omitted). A "claim that a supervisory official knew of unconstitutional conditions and culpable actions of his subordinates but failed to act amounts to acquiescence in the unconstitutional conduct of his subordinates and is sufficient to state a claim

of supervisory liability." *Keates*, 883 F.3d at 1243 (internal quotation marks and citation omitted).

Long fails to state a claim against Warden Harrington. Long does not allege that Warden Harrington was personally involved in a constitutional deprivation. Nor has he sufficiently alleged a causal connection between any conduct by Warden Harrington and a constitutional violation.

To the extent Long claims that he was denied Jum'ah services during Ramadan, he does not say when he allegedly brought this to Warden Harrington's attention. Long also does not say how long Jum'ah services were suspended. If the services resumed soon after Long complained to Warden Harrington, this would contradict Long's claim that Warden Harrington violated his rights.

Regarding Long's claims that CO Hamada and Sgt. Leaialaimatafao separately denied him religious meals on two distinct occasions, Long does not say when he complained to Warden Harrington about these two incidents. Nor does Long allege that he was denied religious meals after he voiced his concerns to Warden Harrington.

Finally, to the extent Long claims that he was not provided with "religious literature," the First Amendment does not require prison officials to purchase religious items for inmates. *See Frank*, 858 F.2d at 1090. Long's claim in Count

V against Warden Harrington is therefore DISMISSED with leave granted to amend.

## C.  Fourteenth Amendment

Long alleges in Count IV that COS Antonio also violated the Equal Protection Clause of the Fourteenth Amendment by canceling Jum'ah services. ECF No. 1 at 25.

The Equal Protection Clause of the Fourteenth Amendment prohibits states from denying any person the equal protection of the laws, with the general objective "that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  "To prevail on an Equal Protection claim brought under § 1983, [a plaintiff] must allege facts plausibly showing that the defendants acted with an intent or purpose to discriminate against [them] based upon membership in a protected class." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (internal quotation marks and citations omitted).  The "intent" component of a discrimination claim requires the prisoner to demonstrate that "the defendant acted at least in part because of [the prisoner]'s protected status."  *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003).

Long fails to state an equal protection claim against COS Antonio, because he does not allege that COS Antonio cancelled the Jum'ah services with an intent

to discriminate against Muslims.  *See Rushdan v. Gear*, 744 F. App'x 510, 511 (9th Cir. 2018) ("The district court properly dismissed [the plaintiff's] equal protection claim because [the plaintiff] failed to allege facts sufficient to show that any defendant discriminated against him on the basis of his religion."); *Warren v. Dupnik*, 585 F. App'x 354, 355 (9th Cir. 2014) ("Dismissal of [prisoner's] equal protection claim was proper because [prisoner] failed to allege facts sufficient to show that defendants intentionally discriminated against him based on his religion by not offering Friday religious services."); *McKenzie v. Ellis*, 541 F. App'x 784, 785 (9th Cir. 2013) ("The district court properly dismissed [the plaintiff's] equal protection claim because [the plaintiff] failed to allege that defendants intentionally discriminated against him based on his religion[.]").

Although Long alleges that Friday Jum'ah services were cancelled for one month, while Christian services were able to continue during the same period, he does not allege that the Jum'ah services were cancelled because they were Islamic. Nor does Long allege that the Jum'ah services did not resume after this temporary interruption.  *See Butler v. Cal. Dep't of Corr.*, No. 17-cv-02399-PJH, 2018 WL 5312203, at *3 (N.D. Cal. Oct. 26, 2018) ("Although prisoners are entitled to equal protection, it does not follow that a prison must duplicate every religious benefit it provides so that all religions are treated exactly the same.").  Long also does not allege that he was otherwise deprived of a reasonable opportunity to pursue his

faith.  Long's equal protection claim against COS Antonio in Count IV is DISMISSED with leave to amend.

## IV.  <u>LEAVE TO AMEND</u>

The Complaint is DISMISSED IN PART with leave to amend, consistent with the directions in this Order on or before Monday, July 12, 2021.  Long may not expand his claims beyond those already alleged herein or add new claims, without explaining how those new claims relate to the claims already alleged. Claims that do not properly relate to his Complaint are subject to dismissal.

If he elects to file an amended pleading, Long must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii, particularly LR10.4, which require an amended complaint to be complete itself, without reference to any prior pleading.  An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the court's prisoner civil rights complaint form.  An amended complaint will supersede the preceding complaint.  *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015); LR10.4.  Claims not realleged in an amended complaint may be deemed voluntarily dismissed.  *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012).

**IN THE ALTERNATIVE:**

In writing on or before Monday, July 12, 2021, Long may state that he elects to proceed solely on his free exercise claim in Count IV against COS Antonio.  On receipt of such written notification, or if Long fails to submit a timely amended complaint, the Court will order the Complaint, as limited by this Order, served on COS Antonio without further notice.

## V.  CONCLUSION

(1) Long's free exercise claim in Count IV against COS Antonio may proceed.

(2) Long's remaining claims are DISMISSED with leave granted to amend.

(3) If he chooses, Long may file an amended complaint that addresses the noted deficiencies in his claims on or before Monday, July 12, 2021.

(4) IN THE ALTERNATIVE to filing an amended complaint, Long may notify the Court in writing on or before Monday, July 12, 2021 that he elects to proceed solely with his free exercise claim in Count IV against COS Antonio.

If Long fails to file either a further amended complaint or a notice of election by Monday, July 12, 2021, the Court will direct the Complaint to be served, as limited by this Order.

(5)  The Clerk is DIRECTED to send Long a prisoner civil rights complaint form so that he may comply with the directions of this Order, if he elects to file an amended complaint.

IT IS SO ORDERED.

DATED: June 4, 2021 at Honolulu, Hawaii.



Helen Gillmor
Senior United States District Judge