IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DE WITT LAMAR LONG, #A1024631, | CIVIL NO. 21-00205 HG-RT |
| Plaintiff, | ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART AND DIRECTING SERVICE |
| vs. | |
| CHAPLAIN CHARLES NOLAND, JR.; CORRECTIONAL OFFICER HAMADA; SERGEANT LEAIALAIMATAFAO; CHIEF OF SECURITY LYLE ANTONIO; WARDEN SCOTT O. HARRINGTON, | |
| Defendants. | |

## ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART AND DIRECTING SERVICE

Before the Court is Plaintiff De Witt Lamar Long's ("Long") first amended prisoner civil rights complaint ("FAC") brought pursuant to 42 U.S.C. § 1983. ECF No. 7.  Long is a practicing Muslim who alleges that prison officials[1] at the

---

[1] Long names in their individual capacities Chaplain Charles Noland, Jr., Correctional Officer ("CO") Hamada, Sergeant ("Sgt.") Leaialaimatafao, Chief of Security ("COS") Lyle Antonio, and Warden Scott O. Harrington.  ECF No. 7 at 1–3.

Halawa Correctional Facility ("HCF")[2] violated his First Amendment right to free exercise of religion and his Fourteenth Amendment right to equal protection in 2019. *Id.* at 7–25. Long claims that Defendants did not purchase and provide him religious literature, denied him religious meals on two occasions, and cancelled religious services. *Id.* For the following reasons, Long's First Amendment claims in Count IV against COS Antonio and Count V against Warden Harrington based on the cancellation of religious services may proceed.[3] His remaining claims are DISMISSED.

## I. <u>STATUTORY SCREENING</u>

The Court is required to conduct a pre-Answer screening of any case in which a prisoner seeks redress from a governmental entity, or officer or employee of a governmental entity, or in which a plaintiff proceeds in forma pauperis. 28 U.S.C. §§ 1915(e)(2), 1915A(a). During this screening, the Court must dismiss any complaint or portion thereof that is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks damages from defendants who are

---

[2] Long is currently incarcerated at the Saguaro Correctional Center ("SCC") in Eloy, Arizona. *See* Hawaii SAVIN, https://www.vinelink.com/classic/#/home/site/50000 (select "Find An Offender," then enter "Long" in "Last Name" field and "Dewitt" in "First Name Field") (last visited Sept. 10, 2021).

[3] Service of the FAC does not foreclose Long from later filing an amended pleading, subject to the requirements of Fed. R. Civ. P. 15 and orders of this Court.

immune from suit.  *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b); *Andrews v. Cervantes*, 493 F.3d 1047, 1055 (9th Cir. 2007) (noting that 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) "are directed at screening out meritless suits early on"); *see also Harris v. Harris*, 935 F.3d 670, 675 (9th Cir. 2019) (describing screening under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a)–(b)).

In determining whether a complaint or any portion thereof should be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B) or 1915A(b), the Court applies the same standard as that under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12").  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam).  Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 642 (9th Cir. 2018) (per curiam).  A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.  *See Iqbal*, 556 U.S. at 678.  Although this plausibility standard does not equate to a "probability requirement," "it asks for more than sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Dent v. Nat'l Football League*, 968 F.3d 1126, 1130 (9th Cir. 2020) (same).

Rule 12 is read in conjunction with Federal Rule of Civil Procedure 8(a) ("Rule 8"). Rule 8 "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although Rule 8 does not require detailed factual allegations, "it demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citation omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citation omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted) (brackets in original); *see also Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016) (same).

The Court construes pro se litigants' pleadings liberally and affords them the benefit of any doubt. *See Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 642 (9th Cir. 2018) (per curiam). Liberal construction of a pro se civil rights complaint, however, "may not supply essential elements of the claim that were not initially pled." *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014) (internal quotation marks and citation omitted). Nor do district court judges have an "obligation to act as counsel or paralegal to *pro se* litigants." *Pliler v. Ford*, 42 U.S. 225, 231

(2004); *see also Eblacas v. Agbulos*, Civ. No. 18-00376 DKW-RLP, 2018 WL 5621954, at *2 (D. Haw. Oct. 30, 2018) ("While the court construes [the plaintiff's] allegations liberally and affords him the benefit of any doubt, it will not speculate about [the plaintiff's] claims, and has no obligation to act as counsel or paralegal to pro se litigants." (internal quotation marks and citation omitted)).

The Court cannot dismiss a pro se litigant's pleading without leave to amend unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment. *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam). Before dismissing a pro se complaint, the Court must provide the litigant with notice of the deficiencies in his complaint "to ensure that the litigant uses the opportunity to amend effectively." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (internal quotation marks and citations omitted).

## II. **BACKGROUND**[4]

Long is a practicing Muslim who arrived at the HCF from the Saguaro Correctional Center ("SCC") on March 6, 2019. ECF No. 7 at 7, 9. Long practices

---

[4] Long's factual allegations are accepted as true for purposes of screening. *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

his faith by praying, attending Jum'ah services,[5] participating in Ramadan,[6]

reading and reciting the Qur'an,[7] and abstaining from eating pork.  *Id.* at 7.  Upon

arriving at the HCF, Long asked Chaplain Noland to add his name to three separate

lists of prisoners who (1) observe Ramadan, (2) "attend Islamic Services," and (3)

consume a "Halal/Kosher diet." [8]  *Id.* at 8.  Long's name was added to the three

lists.  *Id.* at 23.

Long alleges in Count I that he repeatedly asked Chaplain Noland for a

Qur'an and Islamic literature, but Chaplain Noland gave him neither.  *Id.* at 9.  On

May 1, 2019, Long filed a grievance complaining that he was not given a Qur'an.

*Id.*

---

[5] "Jum'ah" is "Friday of the Muslim week and the special noon service on Friday that all adult, male, free Muslims are obliged to attend."  Britannica, Jum'ah, https://www.britannica.com/topic/jumah (last visited Sept. 10, 2021).

[6] Ramadan is "the ninth month of the Islamic year observed as sacred with fasting practiced daily from dawn to sunset."  Merriam-Webster Dictionary, Ramadan, https://www.merriam-webster.com/dictionary/Ramadan (last visited Sept. 10, 2021).  In 2019, Ramadan began the evening of May 5, and it ended the evening of June 3.

[7] The Qur'an is the sacred scripture of Islam.  Britannica, Qur'an, https://www.britannica.com/topic/Quran (last visited Sept. 10, 2021).

[8] "Halal" foods are those sanctioned by Islamic law.  Merriam-Webster, Halal, https://www.merriam-webster.com/dictionary/halal (last visited Sept. 10, 2021).

Long alleges in Count II that CO Hamada refused to provide him with a "Halal/Kosher" meal on May 2, 2019, when the meal being served to inmates included pork.  *Id.* at 11–14.  After Long was given a non-Halal/Kosher meal, he asked CO Hamada to resolve the issue.  *Id.* at 13.  CO Hamada told Long to "take [his] tray and go."  *Id.*  When Long asked to speak with the head cook, as he had been previously told to do if there was an issue with his food, CO Hamada allegedly refused Long's request.  *Id.*  According to Long, he was forced to wait approximately twelve hours between meals.  *Id.*

Long alleges in Count III that Sgt. Leaialaimatafao failed to provide him with a double-portion meal one evening.  *Id.* at 15–18.  During Ramadan, Long generally received a double-portion meal each evening.  *Id.* at 16.  On May 7, 2019, Long reported to the "control box" to receive his evening meal.  *Id.*  Long received a standard meal tray with two pieces of chicken instead of a double-portion tray with four pieces of chicken.  *Id.*  Long asked Sgt. Leaialaimatafao to call the kitchen, but she refused.  *Id.* at 17.  Sgt. Leaialaimatafao told Long "that there was nothing that she could do about it."  *Id.*  When Long asked Sgt. Leaialaimatafao to call the lieutenant on duty, as he had been previously instructed to do, Sgt. Leaialaimatafao allegedly said, "I'm not gonna bother him with this."  *Id.* at 18.

Long alleges in Count IV that Jum'ah services were not available at the HCF during the month of Ramadan in 2019. *Id.* at 19–21. When Long inquired why the services were unavailable, a correctional officer directed Long's attention to a memorandum on the wall from COS Antonio stating that no Jum'ah services were being held. *Id.* at 20. Long claims that, during the same period, Christian services were held. *Id.* Long sent several "inter-unit requests" to COS Antonio that went unanswered. *Id.* at 21. On May 30, 2019, Long also submitted a formal grievance regarding the lack of Jum'ah services. *Id.*

Long alleges in Count V that Warden Harrington failed to protect his "religious rights." *Id.* at 22–25. Long alleges that he submitted "several Grievances," and Warden Harrington was therefore "well aware" of the events described above. *Id.* at 23. Although Warden Harrington responded to the grievances, Long alleges that the "issues were not resolved" and "the incidents and violations got worse." *Id.* According to Long, his "problems" continued until he returned to the SCC on or around July 18, 2019. *Id.* at 23–24.

Long seeks "[c]ompensatory, consequential, special," and punitive damages, restitution, attorney's fees and costs, and interest. *Id.* at 26.

### III. <u>DISCUSSION</u>

**A.     Legal Framework for Claims Under 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege:  (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Park v. City & County of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020).  Section 1983 requires a connection or link between a defendant's actions and the plaintiff's alleged deprivation.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008) ("In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury." (citation omitted)).  "'A person "subjects" another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"  *Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

**B.     First Amendment**

"Inmates retain the protections afforded by the First Amendment, 'including its directive that no law shall prohibit the free exercise of religion.'"  *Shakur v*

*Schriro*, 514 F.3d 878, 883–84 (9th Cir. 2008) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)).  To implicate the Free Exercise Clause, a prisoner must allege that the belief at issue is both "sincerely held" and "rooted in religious belief."  *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015) (internal quotation marks and citation omitted).  Additionally, a prisoner must allege that prison officials substantially burdened the practice of his religion.  *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015).  "A substantial burden ... place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs."  *Id.* at 1031–32 (citation omitted).

A regulation or practice that burdens an inmate's First Amendment rights may be upheld if it is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987).  This determination requires courts to consider:  (1) whether there is a valid, rational connection between the regulation and the legitimate governmental interest; (2) whether there are alternative means of exercising the right that remain open to inmates; (3) the impact accommodation of the right will have on guards and other inmates, and on the allocation of prison resources; and (4) the absence of ready alternatives.  *Id.* at 90.

## 1. Religious materials

Long alleges in Count I that Chaplain Noland violated the First Amendment by not providing him with a Qur'an or Islamic literature.  ECF No. 7 at 7–10.

Long fails to state a plausible claim for relief because the First Amendment does not require prison officials to purchase religious items for inmates.  *See Frank v. Terrell*, 858 F.2d 1090, 1090 (5th Cir. 1988) (per curiam) ("'[T]here cannot possibly be any constitutional or legal requirement that the government provide materials for every religion and sect practiced in this diverse country[.]" (quoting *Cruz v. Beto*, 405 U.S. 319, 323 (1972) (Burger, C.J., concurring)); *see also Ward v. Walsh*, 1 F.3d 873, 880 (9th Cir. 1993) (concluding that prison officials did not have an affirmative obligation to provide inmate with clothing made with only one fiber); *Indreland v. Yellowstone Cnty. Bd. of Comm'rs*, 693 F. Supp. 2d 1230, 1242 (D. Mont. 2010) ("The Detention Facility was not required to purchase religious materials . . . at their own expense."); *Florer v. Peck*, No. CV-05-5039-EFS, 2007 WL 9717443, at *4 (E.D. Wash. July 31, 2007) ("Plaintiff has not cited to any authority creating an affirmative obligation on [prison officials] to provide religious material.").

Long does not allege that that the HCF had the materials he had requested, but Chaplain Noland refused to provide them to him.  Long also does not allege that Chaplain Noland prohibited him from obtaining the requested materials on his

own. *Cf. Cooper v. Pate*, 378 U.S. 546, 546 (1964) (per curiam) (concluding that complaint stated a claim where prisoner alleged that he was denied permission to purchase certain religious publications). Long's claim in Count I against Chaplain Noland is DISMISSED with prejudice.

## 2. *Religious meals*

Long alleges in Count II that CO Hamada violated the First Amendment by denying him a "Halal/Kosher" meal on May 2, 2019. ECF No. 7 at 11–14. In Count III, Long alleges that Sgt. Leaialaimatafao violated the First Amendment by denying him a double-portion meal on May 7, 2019. *Id.* at 15–18.

Inmates "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987); *see also Thomas v. Baca*, 827 F. App'x 777, 778 (9th Cir. 2020) (same). As the Ninth Circuit has explained, however, "relatively short-term and sporadic" intrusions do not substantially burden the free exercise of religion. *Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998).

Long fails to state a plausible claim for relief against either CO Hamada or Sgt. Leaialaimatafao because he does not plausibly allege that missing a meal on May 2, 2019, or being denied a double-portion meal on May 7, 2019, substantially burdened his practice of religion. To the extent Long claims that CO Hamada

denied him a religious meal on May 2, 2019, "the denial of . . . a religious meal, on a single isolated occasion does not constitute a 'substantial burden' and thus does not violate the First Amendment." *Johnson v. Scott*, No. CV 21-2543-AB(E), 2021 WL 1664175, at *3 (C.D. Cal. Apr. 28, 2021); *see also Combs v. Washington*, 660 F. App'x 515, 517 (9th Cir. 2016) (concluding that "sporadic mistakes in . . . food preparation . . . did not rise to the level of a constitutional violation"). Likewise, Long fails to state a claim against Sgt. Leaialaimatafao based on a separate incident during Ramadan. Although Long alleges that Sgt. Leaialaimatafao did not provide him with a double-portion meal on May 7, 2019, Long does not dispute that he was offered a single serving that conformed with his dietary restrictions. *See* ECF No. 7 at 16. Long fails, therefore, to state a plausible claim against Sgt. Leaialaimatafao. *See Pouncil v. Sherman*, No. 1:17-cv-00547-AWI-BAM (PC), 2018 WL 646105, at *3 (E.D. Cal. Jan. 31, 2018) (concluding prisoner failed to state a claim based on alleged denial of meals on one night of Ramadan); *see also Moore v. Katavich*, No. 1:15-cv-01317-BAM-PC, 2015 WL 13237071, at *2 (E.D. Cal. Dec. 18, 2015) ("Brief, sporadic food-delivery problems are insufficient to establish a substantial burden on plaintiff's free exercise of religion.").

Long does not allege that he was repeatedly denied meals. Nor does he allege that Sgt. Leaialaimatafao was aware of the May 2, 2019 incident involving

CO Hamada. Long's claims against CO Hamada in Count II and Sgt. Leaialaimatafao in Count III are DISMISSED with prejudice.

### 3. *Religious services*

Long alleges in Count IV that COS Antonio violated the First Amendment by cancelling Jumʻah services during Ramadan. ECF No. 7 at 19–21.

The Supreme Court has said that "the 'exercise of religion' often involves not only belief and profession but the performance of . . . physical acts[,] [for example,] assembling with others for a worship service[.]" *Employment Div., Dep't of Human Resources of Or. v. Smith*, 494 U.S. 872, 877 (1990).

According to Long, "Friday . . . is the most important day of worship in Islam." ECF No. 7 at 19. Long describes Jumʻah as "the weekly occasion earmarked by GOD for Muslims to express their collective devotion." *Id.* Long alleges that although he was previously allowed to attend Jumʻah services, he was not allowed to participate in those services during Ramadan in 2019. *Id.* at 20.

Long claims that COS Antonio cancelled Jumʻah services during the entire month of Ramadan, and that this prevented him "from engaging in a sincerely held religious practice in accordance with his sincerely held religious beliefs." *Id.* at 21. Long states a plausible free exercise claim in Count IV against COS Antonio that may proceed. *See Henderson v. Muniz*, No. 14-cv-01857-JST, 2017 WL 6885393,

14

at *9–10 (N.D. Cal. Nov. 28, 2017) (denying summary judgment on First

Amendment claim where prisoner alleged that he was denied "Jumuʻah prayers").

### 4. Supervisory liability

Long alleges in Count V that Warden Harrington violated the First

Amendment based on the events described above.  ECF No. 7 at 22–25.

There is no *respondeat superior* liability under 42 U.S.C. § 1983.  *Vazquez*

*v. County of Kern*, 949 F.3d 1153, 1166 (9th Cir. 2020).  "Because vicarious

liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has

violated the Constitution."  *Iqbal*, 556 U.S. at 676.   "A supervisory official may be

held liable under § 1983 only if there exists either (1) his or her personal

involvement in the constitutional deprivation, or (2) a sufficient causal connection

between the supervisor's wrongful conduct and the constitutional violation."

*Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018) (internal quotation marks

and citations omitted).

"The requisite causal connection can be established by setting in motion a

series of acts by others, or by knowingly refusing to terminate a series of acts by

others, which the supervisor knew or reasonably should have known would cause

others to inflict a constitutional injury."  *Felarca v. Birgeneau*, 891 F.3d 809, 820

(9th Cir. 2018) (internal quotation marks and citations omitted).  "Thus, a

supervisor may be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (internal quotation marks and citation omitted).  A "claim that a supervisory official knew of unconstitutional conditions and culpable actions of his subordinates but failed to act amounts to acquiescence in the unconstitutional conduct of his subordinates and is sufficient to state a claim of supervisory liability." *Keates*, 883 F.3d at 1243 (internal quotation marks and citation omitted).

Long fails to state a claim against Warden Harrington based on the availability of religious materials and religious meals at the HCF.  For the reasons set forth above, Longs fails to state a plausible claim based on religious materials because prison officials were not required to provide these for him.  He also fails to state a claim based on sporadic issues with his religious meals.  Any such claims against Warden Harrington are therefore DISMISSED with prejudice.

Long's claim against Warden Harrington based on the denial of Jum'ah services during Ramadan, however, may proceed.  Long alleges that he filed a grievance complaining about the cancellation of religious services on May 30, 2019.  ECF No. 7 at 23.  Although Warden Harrington responded to Long's

grievance, Long continued "having problems with his religious freedoms until the day he left [the] HCF," on July 18, 2019. *Id.* at 23–24. Long therefore claims that Warden Harrington "failed to remedy the violation[] of [Long's] religious rights[.]" Id. at 24. This claim may proceed. *See Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) (concluding that "knowledge of the unconstitutional conditions in the jail . . . coupled with . . . inaction, amounted to acquiescence in the unconstitutional conduct of [defendant's] subordinates").

## C. Fourteenth Amendment

Long alleges in Count IV that COS Antonio also violated the Equal Protection Clause of the Fourteenth Amendment by canceling Jum'ah services. ECF No. 7 at 19.

The Equal Protection Clause of the Fourteenth Amendment prohibits states from denying any person the equal protection of the laws, with the general objective "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "To prevail on an Equal Protection claim brought under § 1983, [a plaintiff] must allege facts plausibly showing that the defendants acted with an intent or purpose to discriminate against [them] based upon membership in a protected class." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (internal quotation marks and citations omitted). The "intent" component of a

discrimination claim requires the prisoner to demonstrate that "the defendant acted at least in part because of [the prisoner]'s protected status." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003).

Long fails to state an equal protection claim against COS Antonio, because he does not allege that COS Antonio cancelled the Jum'ah services with an intent to discriminate against Muslims. *See Rushdan v. Gear*, 744 F. App'x 510, 511 (9th Cir. 2018) ("The district court properly dismissed [the plaintiff's] equal protection claim because [the plaintiff] failed to allege facts sufficient to show that any defendant discriminated against him on the basis of his religion."); *Warren v. Dupnik*, 585 F. App'x 354, 355 (9th Cir. 2014) ("Dismissal of [prisoner's] equal protection claim was proper because [prisoner] failed to allege facts sufficient to show that defendants intentionally discriminated against him based on his religion by not offering Friday religious services."); *McKenzie v. Ellis*, 541 F. App'x 784, 785 (9th Cir. 2013) ("The district court properly dismissed [the plaintiff's] equal protection claim because [the plaintiff] failed to allege that defendants intentionally discriminated against him based on his religion[.]").

Although Long alleges that Friday Jum'ah services were cancelled for one month, while Christian services were able to continue during the same period, he does not allege that the Jum'ah services were cancelled because they were Islamic. Nor does Long allege that the Jum'ah services did not resume after this temporary

interruption.  *See Butler v. Cal. Dep't of Corr.*, No. 17-cv-02399-PJH, 2018 WL 5312203, at *3 (N.D. Cal. Oct. 26, 2018) ("Although prisoners are entitled to equal protection, it does not follow that a prison must duplicate every religious benefit it provides so that all religions are treated exactly the same.").  Long also does not allege that he was otherwise deprived of a reasonable opportunity to pursue his faith.  Long's equal protection claim against COS Antonio in Count IV is DISMISSED with prejudice.

## D.  RLUIPA

Long also appears to seek monetary relief from Defendants in their individual capacity under the Religious Land Use and Institutionalized Persons Act of 2002 ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5.  *See* ECF No. 7 at 7, 11, 15, 19, 22.

The RLUIPA states that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution" unless the government shows that the burden furthers "a compelling governmental interest" and does so by the "least restrictive means."  42 U.S.C. § 2000cc-1.  The Ninth Circuit has held, however, that a plaintiff may not seek damages under the RLUIPA against prison officials in their individual capacities.  *See Wood v. Yordy*, 753 F.3d 899, 901 (9th Cir. 2014); *see also Rogers v. Giurbino*, 731 F. App'x 722, 723 (9th Cir. 2018) ("To the extent that [the plaintiff] sought to bring individual-

capacity RLUIPA claims seeking money damages, the district court properly

dismissed the claims because such claims are not available under RLUIPA.").

Long's claims under RLUIPA against Defendants in their individual capacities are

therefore DISMISSED with prejudice.[9]

## V.  CONCLUSION

(1) Long's free exercise claim in Count IV against COS Antonio may

proceed.

(2) Long's free exercise claim in Count V against Warden Harrington based

on the cancellation of Jum'ah services my proceed.

(3) Long's remaining claims are DISMISSED with prejudice.

## V.  SERVICE ORDER

IT IS HEREBY ORDERED:

(1)  The Clerk shall send the U.S. Marshal a copy of this Order, the First

Amended Complaint, ECF No. 7, and one separate completed summons each for

Defendants Antonio and Harrington.  The U.S. Marshal shall open a file and retain

---

[9] Even if Long had sought injunctive relief against Defendants in their official capacities, his claims would be moot because he is no longer incarcerated at the HCF.  *See Dilley v. Gunn*, 64 F.3d 1365, 1368–69 (9th Cir. 1995) (concluding that prisoner's claims for injunctive relief were moot because he was transferred to another prison and had not demonstrated a reasonable expectation that he would be transferred back); *Padilla v. Nev. Dep't of Corr.*, 510 F. App'x 629, 630 (9th Cir. 2013) ("Plaintiff's claims for injunctive relief from the conditions of confinement at [one prison] are moot now that he has been transferred to [another prison].").

these documents for use in the event that any Defendant declines to waive service of the summons.

(2)  Per agreement with the Department of Public Safety ("DPS"), the Clerk shall provide by electronic means to DPS litigation coordinators Laurie Nadamoto, Esq. and Shelley Harrington, Esq.:  (a) a copy of the First Amended Complaint, ECF No. 7, and any exhibits, and a completed Notice of Lawsuit and Request for Waiver of Service of Summons form separately addressed to Defendants Antonio and Harrington; and (b) two completed Waiver of Service of Summons forms each for Antonio and Harrington.

(3)  Defendants Antonio and Harrington shall have 30 days after the request for waiver of service of summons is sent to return the waiver to the U.S. Marshal, who shall file the waiver with the court.  If Defendants Antonio and Harrington fail to do so within that time, the U.S. Marshal shall NOTIFY THE COURT, who will direct the U.S. Marshal to personally serve the summons and complaint on Defendants Antonio and Harrington.  A personally served Defendant will be required to pay the costs of service.

(4)  Defendants Antonio and Harrington shall file a response to the First Amended Complaint within 60 days after electronic service if formal service is waived, or 45 days if service of the summons is not waived.

(5)  Long shall notify the court within one week of any change of address. This notice shall contain only information about the change of address and its effective date and shall not include requests for other relief.  Failure to do so may result in dismissal of the action for failure to prosecute under Federal Rule of Civil Procedure 41(b).

(6)  After Defendants Antonio and Harrington have filed a response to the First Amended Complaint, Long's documents are deemed served on any Defendant or their attorney(s) who participate in the court's Case Management Electronic Case Filing (CM/ECF) system.  The U.S. Marshal is not responsible for serving documents after service of the operative pleading.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 13, 2021.



Helen Gillmor
United States District Judge