IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

|  |  |  |
|---|---|---|
| DE WITT LAMAR LONG, | ) | CIV. NO. 21-00205 HG-RT |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) |  |
|  | ) |  |
| CHIEF OF SECURITY LYLE ANTONIO; | ) |  |
| WARDEN SCOTT O. HARRINGTON, | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

**ORDER GRANTING DEFENDANTS LYLE ANTONIO AND SCOTT HARRINGTON'S MOTION FOR SUMMARY JUDGMENT AS TO ALL CLAIMS IN PLAINTIFF'S FIRST AMENDED COMPLAINT (ECF No. 45)**

**and**

**GRANTING DEFENDANTS' REQUEST FOR QUALIFIED IMMUNITY**

Pro se prisoner De Witt Lamar Long ("Plaintiff")[1] filed a First Amended Complaint against Defendant Lyle Antonio, the Chief of Security at Halawa Correctional Facility, and Defendant Scott Harrington, the Warden of Halawa Correctional Facility.

Plaintiff Long asserts that he is a practicing Muslim. Plaintiff claims that his right to the Free Exercise of his religion was violated in 2019 while he was incarcerated. Plaintiff asserts that the Halawa Correctional Facility did not offer Friday Jumu'ah prayer services during the month of Ramadan between May and June 2019 while Plaintiff was incarcerated there.

_____

[1] Plaintiff is proceeding pro se.  The Court construes Plaintiff's pleadings liberally.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).

1

Defendants move for summary judgment.  Defendants do not dispute that there were no Jumu'ah prayer services for approximately one month in 2019.  Defendants assert they are entitled to judgment in their favor because neither Defendant Antonio, as Chief of Security, nor Defendant Harrington, as Warden, was responsible for the one-month interruption in Jumu'ah services at the facility.

In addition, they argue that Plaintiff has not presented evidence of a constitutional violation because the one-month interruption in Jumu'ah service was not a substantial burden to Plaintiff's religious practice and he had alternative means to practice his religion.

Defendants also seek qualified immunity because Plaintiff failed to establish a violation of a constitutional right that was clearly established at the time of the events in 2019.

Defendants' Motion for Summary Judgment is **GRANTED** (ECF No. 45).  Defendants' request for Qualified Immunity is **GRANTED.**

## PROCEDURAL HISTORY

On April 26, 2021, Plaintiff, proceeding pro se, filed a Complaint.  (ECF No. 1).

On June 4, 2021, the Court issued an ORDER DISMISSING COMPLAINT IN PART WITH LEAVE TO AMEND.  (ECF No. 4).

On August 13, 2021, Plaintiff filed the First Amended Complaint.  (ECF No. 7).

On September 13, 2021, the Court issued an ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART AND DIRECTING SERVICE. (ECF No. 8). The Court allowed the First Amended Complaint to proceed solely on (1) Plaintiff's free exercise claim in Count IV against Defendant Antonio in his individual capacity, and (2) Plaintiff's free exercise claim in Count V against Defendant Harrington in his individual capacity. (Id. at pp. 14, 16).

On November 8, 2022, Defendants filed a Motion for Summary Judgment and a Concise Statement of Facts. (ECF Nos. 45 and 46).

On November 15, 2022, the Court issued a briefing schedule. (ECF No. 48).

On December 7, 2022, Plaintiff filed a Motion for Extension of Time to File an Opposition. (ECF No. 49).

On December 8, 2022, the Court granted Plaintiff's Motion for Extension of Time to File an Opposition. (ECF No. 50).

On January 11, 2023, Plaintiff filed an Opposition to Defendants' Motion for Summary Judgment. (ECF No. 51).

On January 17, 2023, the Court issued a Minute Order striking Plaintiff's Opposition for failure to comply with the Local Rules for the District of Hawaii. (ECF No. 52). The Court granted Plaintiff additional time to file an Opposition and Concise Statement in Opposition in conformity with the Local Rules. (Id.)

On January 25, 2023, Plaintiff filed a Motion to Compel Discovery. (ECF No. 53).

On January 30, 2023, the Court denied Plaintiff's Motion to Compel Discovery.  (ECF No. 56).

On January 30, 2023, Plaintiff filed an Opposition to the Motion for Summary Judgment.  (ECF Nos. 57-59).

On February 15, 2023, Defendants filed a Reply.  (ECF No. 60).

On February 28, 2023, without Leave of Court, Plaintiff filed a Sur-Reply Memorandum in Opposition.  (ECF No. 61).

On April 26, 2023, the Court issued a Minute Order striking Plaintiff's Opposition, Concise Statement of Facts, and Sur-Reply, and Defendants' Reply due to Plaintiff's failure to comply with the Local Rules for the District of Hawaii.  (ECF No. 62). The Court granted the Parties additional time to file their Opposition and Reply.  (Id.)

On May 22, 2023, Plaintiff filed a Motion for Extension of Time to file his Opposition.  (ECF No. 66).

On May 25, 2023, the Court once again granted Plaintiff's request for extension of time.  (ECF No. 67).

On June 5, 2023, Plaintiff filed his Opposition and Concise Statement of Facts in Opposition.  (ECF Nos. 70, 71).

On July 3, 2023, Defendants filed their Reply.  (ECF No. 73).

The Court elects to decide Defendants' Motion for Summary Judgment without a hearing pursuant to District of Hawaii Local Rule 7.9(c).

4

## BACKGROUND

**The following facts are undisputed**:

Plaintiff was incarcerated at Halawa Correctional Facility between March 6, 2019 and July 17, 2019. (Declaration of Gary Kaplan ("Kaplan Decl."), Program Control Administrator at Halawa Correctional Facility, attached to Def.'s Concise Statement of Facts ("CSF") at ¶ 4, ECF No. 46-2).

At that time, Defendant Lyle Antonio served as Chief of Security. (Declaration of Defendant Lyle Antonio ("Antonio Decl.") at ¶ 1, attached to Def.'s CSF, ECF No. 46-3). Defendant Scott O. Harrington served as the Warden of the Halawa Correctional Facility. (Declaration of Defendant Scott Harrington ("Harrington Decl.") at ¶ 1, attached to Def.'s CSF, ECF No. 46-4).

During Plaintiff's incarceration at Halawa Correctional Facility in 2019, Plaintiff identified himself as a practicing Muslim and he was provided with Muslim religious items to facilitate his religious practice, including a Qur'an, a prayer rug, and a kufi (religious headwear). (Declaration of Plaintiff De Witt Lamar Long ("Long Decl.") at ¶¶ 5, 18-19, ECF No. 71-1; Harrington Decl. at ¶ 8, ECF No. 46-4; Kaplan Decl. at ¶ 10, ECF No. 46-2; Department of Public Safety Remedy Form dated May 10, 2019, attached as Ex. D to Def.'s CSF, ECF No. 46-8; Department of Public Safety Remedy Form dated June 7, 2019, attached as Ex. F to Def.'s CSF, ECF No. 46-10).

Friday Jumu'ah prayer services for Muslim inmates were held in some weeks during Plaintiff's incarceration at Halawa Correctional Facility between March 6, 2019 and July 17, 2019. (Long Decl. at ¶ 11, 15, 16, ECF No. 71-1; Antonio Decl. at ¶ 5, ECF No. 46-3; Department of Public Safety Remedy Form dated July 2, 2019, attached as Ex. B to Def.'s CSF, ECF No. 46-6).  The Parties agree, however, that no Friday Jumu'ah prayer services were offered during the month of Ramadan between May and June 2019.  (Id.)

The Halawa Correctional Center informed Plaintiff that the interruption in Friday Jumu'ah prayer services for approximately one month in May and June 2019 was due, in part, to "staff shortages."  (Department of Public Safety Remedy Form dated July 2, 2019, attached as Ex. B to Def.'s CSF, ECF No. 46-6).

Arrangements were made for Friday Jumu'ah prayer services to resume in June 2019 when the facility began "working with an Imam to better provide Muslims, such as [Plaintiff], with the required Friday prayers."  (Id.; see Department of Public Safety Remedy Form dated June 7, 2019, attached as Ex. F to Def.'s CSF, ECF No. 46-10, explaining that "arrangements have been made for the Imam to meet with you and to conduct Jumah prayers on Fridays").

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(a).  To defeat summary judgment there must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.  The moving party need not produce any evidence at all on matters for which it does not have the burden of proof.  Celotex, 477 U.S. at 325.  The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law.  That burden is met by pointing out to the district court that there is an absence of evidence to support the non-moving party's case.  Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979).  The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R.

Civ. P. 56(e); <u>Brinson v. Linda Rose Joint Venture</u>, 53 F.3d 1044, 1049 (9th Cir. 1995).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Nidds</u>, 113 F.3d at 916 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party.  <u>State Farm Fire & Casualty Co. v. Martin</u>, 872 F.2d 319, 320 (9th Cir. 1989).  Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed.  Fed. R. Civ. P. 56(c); <u>Celotex</u>, 477 U.S. at 324.  The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed. R. Civ. P. 56(e); <u>T.W. Elec. Serv.</u>, 809 F.2d at 630.  The opposing party cannot rest on mere allegations or denials.  Fed. R. Civ. P. 56(e); <u>Gasaway v. Northwestern Mut. Life Ins. Co.</u>, 26 F.3d 957, 959-60 (9th Cir. 1994).  When the non-moving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact.  <u>Hansen v. United States</u>, 7 F.3d 137, 138 (9th Cir. 1993); <u>see also</u> <u>National Steel Corp. v. Golden Eagle Ins. Co.</u>, 121 F.3d 496, 502 (9th Cir. 1997).

## **ANALYSIS**

The First Amended Complaint alleges that Defendant Lyle

Antonio, the Chief of Security at Halawa Correctional Facility,
and Defendant Scott Harrington, the Warden of Halawa Correctional
Facility, violated Plaintiff De Witt Lamar Long's First Amendment
Right to freely exercise his religion while he was incarcerated
between March 6, 2019 and July 17, 2019.[2]  Specifically,
Plaintiff alleges that the Defendants were involved in the
interruption of Friday Jumu'ah prayer services during the month
of Ramadan in 2019.

    Plaintiff's constitutional claim is brought against the
Defendants pursuant to 42 U.S.C. § 1983.

## I.   Plaintiff Must Demonstrate The Personal Participation Of Each Defendant In Causing A Constitutional Violation In Order To Bring A Section 1983 Claim Against Them

    Section 1983 provides that "[e]very person who, under color
of any [state law] subjects, or causes to be subjected, any
citizen of the United States ... to the deprivation of any
rights, privileges, or immunities secured by the Constitution ...
shall be liable to the party injured...."  42 U.S.C. § 1983.
Section 1983 does not create substantive rights, but it merely
serves as the procedural device for enforcing substantive
provisions of the United States Constitution and federal

---

    [2] Pursuant to the Court's September 13, 2021 ORDER
DISMISSING FIRST AMENDED COMPLAINT IN PART AND DIRECTING SERVICE
(ECF No. 8), the only remaining claims in the First Amended
Complaint are (1) Plaintiff's free exercise claim in Count IV
against Defendant Antonio in his individual capacity, and (2)
Plaintiff's free exercise claim in Count V against Defendant
Harrington in his individual capacity.

statutes.  Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991).

To be held liable under Section 1983, Plaintiff must establish as to each Defendant that their personal conduct either (1) directly subjected Plaintiff to a deprivation of federal rights; or (2) indirectly caused Plaintiff to be subjected to the same.  Lacey v. Maricopa Cnty., 693 F.3d 896, 915 (9th Cir. 2012); see Park v. City & Cnty. of Honolulu, 952 F.3d 1136, 1140 (9th Cir. 2020).

A person "subjects" another to a constitutional violation if he "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Lacey, 693 F.3d at 915 (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  A person can "cause" another to be subjected to a rights violation by setting in motion a series of acts which the actor knows or reasonably should know would cause the constitutional injury.  Id.

Under Section 1983, supervisory personnel cannot be liable for the actions of their employees under a theory of respondeat superior.  Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979).  Plaintiff must provide evidence to demonstrate the personal participation by the defendant and the causal link between the defendant's personal participation and the constitutional violation.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).

**A.    There Is No Evidence Of Personal Participation By Defendant Chief Of Security Antonio To Support A Section 1983 Claim**

There is no evidence that Defendant Antonio personally participated in any decision to interrupt or cancel Jumu'ah prayer services during the month of Ramadan in May and June 2019. Defendant Antonio explained in his Declaration that in his duties as the Chief of Security at the Halawa Correctional Facility, he did not "personally create, maintain, or schedule religious services" and had "no involvement in the scheduling of religious services or volunteer religious practitioners." (Antonio Decl. at ¶ 3, ECF No. 46-3). Defendant Antonio stated that he "had no personal involvement with [Plaintiff's] allegations about the temporary interruption of religious services." (Id. at ¶ 5).

The First Amended Complaint alleged that there was a memo on the wall generated by Defendant Antonio that said there were no Friday Jumu'ah services. (First Amended Complaint ("FAC") at p. 20, ¶ 11, ECF No. 7). Defendant Antonio disputes Plaintiff's allegation stating, "There is no such memo. In addition, I would not have created such a memo because the scheduling of religious services was not part of my duties and responsibilities as the HCF [Halawa Correctional Facility] Chief of Security." (Antonio Decl. at ¶ 6, ECF No. 46-3).

Plaintiff's Declaration submitted in support of his Concise Statement of Facts does not put forward any facts about the

purported memo that he references in his First Amended Complaint.
Plaintiff has not attached either the original or a copy of the
memo alleged to have been posted in 2019.  Rather, Plaintiff
attached a different memo posted in March 2020 after the events
in this case.  The memo posted during the pandemic is concerning
COVID's impact on services to inmates.  It is irrelevant to the
allegations in the First Amended Complaint.  (Long Decl. at ¶ 27,
ECF No. 71-1; see Ex. D, attached to Pl.'s CSF, ECF No. 71-5).

Plaintiff's claim that there was a memo posted regarding
cancellation of religious services in 2019 is not material to
Defendants' Motion for Summary Judgment.  There is no evidence
that Defendant Antonio was personally involved in the decision-
making to cancel any Friday Jumu'ah prayer services in 2019.
There is no evidence that the decision to cancel services in 2019
was made by Defendant Antonio or that he had the authority to
issue a memorandum or to make or to influence such a decision.

To the contrary, the undisputed evidence in the record
demonstrates that the Halawa Correctional Facility Chief of
Security was not responsible for the scheduling of religious
services.  According to the Halawa Correctional Facility Policy,
the chaplain was responsible for scheduling religious services.
(Kaplan Decl. at ¶¶ 7-8, ECF No. 46-2; Department of Public
Safety Religious Program Policy No. COR.12.05, effective May 3,
2017, attached as Ex. J to Def.'s CSF, ECF No. 46-14); see also
Long v. Sugai, Civ. No. 19-cv-00235 JMS-RT, 2022 WL 2208773, at
*7 (D. Haw. June 21, 2022) (finding Lyle Antonio as the Chief of

Security at Halawa Correctional Facility was not responsible for creating or maintaining religious services at the facility).

Plaintiff does not provide any evidence to support his claim that Defendant Antonio was involved in the interruption in Friday Jumu'ah prayer services in 2019. Plaintiff merely relies on his own Declaration where he makes a conclusory statement that he believes Defendant Antonio was responsible. Plaintiff's self-serving declaration that states only conclusions and not facts is not admissible evidence. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1059 n.5, 1061 (9th Cir. 2002). Plaintiff's own hypothesis, without more, is insufficient to establish the actual personal participation by Defendant Antonio in a constitutional violation.

**B.    There Is No Evidence Of Personal Participation By Defendant Warden Harrington To Support A Section 1983 Claim**

There is also no evidence of the personal participation in any alleged constitutional violation by Defendant Harrington who served as the Warden of the Halawa Correctional Facility.

Just as with Defendant Antonio, Plaintiff provided no evidence of any personal participation of Defendant Harrington in any decision-making related to the cancellation or interruption in Friday Jumu'ah prayer services during the month of Ramadan in May and June 2019 at the Halawa Correctional Facility. Plaintiff merely summarily concludes in his Declaration that he believes

that Defendant Harrington was responsible.

There is no evidence that Defendant Harrington was involved in the scheduling, canceling, or decision-making regarding the availability of Friday Jumu'ah prayer services in 2019.

Defendant Harrington did not respond to Plaintiff's administrative grievance regarding the cancellation of Friday Jumu'ah prayer services.[3]  On July 2, 2019, Halawa Correctional Facility Program Control Administrator Gary Kaplan responded to Plaintiff's administrative grievance regarding the cancellation of the services during Ramadan in 2019.  (Kaplan Decl. at ¶ 1, 4, ECF No. 46-2; Administrative Remedy Form Response dated July 2, 2019 for Grievance No. 410543, attached as Ex. B to Def.'s CSF, ECF No. 46-6).

On June 7, 2019, Defendant Harrington responded to a different administrative grievance by Plaintiff regarding his request for religious items.  (Department of Public Safety Remedy Form dated June 7, 2019, Grievance No. 410518, attached as Ex. F to Def.'s CSF, ECF No. 46-10).  The grievance document does not demonstrate that the Defendant Warden Harrington was personally involved in any decision to cancel Friday Jumu'ah prayer services during Ramadan in 2019.

---

[3] Defendants' Motion (ECF No. 45) at pages 7 and 13 states a third grievance of Plaintiff No. 410521 was filed on or about May 3, 2010.  This is a typographical error.  The grievance was filed on May 13, 2019.  (See Exhibit E, Receipt of Grievance dated May 13, 2019, attached to Def.'s CSF, ECF No. 46-9; see also Ex. D, Administrative Remedy Form, attached to Def.'s CSF, ECF No. 46-8).

A prison warden cannot be liable pursuant to Section 1983 where his only involvement in the allegedly unconstitutional conduct is the denial of an unrelated administrative grievance. Grenning v. Klemme, 34 F.Supp.3d 1144, 1157 (E.D. Wash 2014) (citing Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999); see also Jackson v. State of Nevada, 2019 WL 6499106, at *7 (D. Nev. Dec. 3, 2019)).

Construing the record in a light most favorable to Plaintiff, there is no evidence to demonstrate any personal participation by Defendant Harrington in an act that caused a constitutional violation to Plaintiff.

**II.  Plaintiff Has Failed To Demonstrate A Constitutional Violation Pursuant To The Free Exercise Clause Of The First Amendment To The United States Constitution**

Even if Plaintiff was able to demonstrate personal participation by either Defendant Antonio or Defendant Harrington, Plaintiff has not demonstrated a violation of his constitutional right to freely exercise his religion while incarcerated.

The right of a prisoner to freely exercise his religion is limited by institutional objectives and by the loss of freedom that comes with incarceration.  Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013) (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)).  The protections of the Free Exercise Clause to the First Amendment of the United

15

States Constitution are triggered when a prison official substantially burdens the practice of an inmate's sincerely held religious beliefs.  <u>Shakur v. Schriro</u>, 514 F.3d 878, 884-85 (9th Cir. 2008).

A substantial burden places more than an inconvenience on religious exercise.  <u>Jones v. Williams</u>, 791 F.3d 1023, 1031-32 (9th Cir. 2015).  In order to be a substantial burden, it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs.  <u>Id.</u> A burden on an inmate's religious exercise that is "relatively short-term" or "sporadic" does not violate the constitution because it is not a "substantial burden" on the inmate's rights.  <u>Canell v. Lightner</u>, 143 F.3d 1210, 1215 (9th Cir. 1998).

If an inmate demonstrates a substantial burden on his religious exercise, the Government has the opportunity to show that the interference or restriction on the inmate's religious exercise is reasonably related to a legitimate penological interest.  <u>Walker v. Beard</u>, 789 F.3d 1125, 1138 (9th Cir. 2015) (citing <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987)).

**A.   Plaintiff Has Failed To Demonstrate The Lack Of Jumu'ah Prayer Services In The Month Of Ramadan In May And June 2019 Was A Substantial Burden To His Religious Practice**

The United States District Court for the Central District of California recently ruled that the interruption of Friday Jumu'ah

prayer services for seven months while the prison attempted to find a replacement imam was not a "substantial burden" on the prisoner's free exercise rights. Liggins v. Gastelo, 2023 WL 2529751, *5-*6 (C.D. Cal. Feb. 21, 2023), report and recommendation adopted in 2023 WL 2529540 (C.D. Cal. Mar. 14, 2023). The court ruled that the seven-month interruption in Jumu'ah services was "relatively short-term and sporadic" and did not violate the Constitution. Id. at *6 (citing Canell, 143 F.3d at 1215).

Here, the one month interruption in Jumu'ah prayer services for Ramadan in May and June 2019, six months fewer than the interruption in Liggins, does not constitute a substantial burden to Plaintiff's right to freely exercise his religion.

Courts have regularly ruled that an interruption in prayer services for less than three months is "relatively short-term and sporadic" and does not rise to the level of a substantial burden. Canell, 143 F.3d at 1215 (explaining that interrupting inmate's prayer 18 times over the course of two months was not a substantial burden); Chaparro v. Ducart, 2016 WL 491635, at *5 (N.D. Cal. Feb. 9, 2016) (granting defendants' motion for summary judgment because four missed chapel services did not amount to a substantial burden on plaintiff's free exercise rights), aff'd 695 Fed. Appx. 254, 255 (9th Cir. Aug. 14, 2017).

**B.    The Interruption in Prayer Services In May and June 2019 Was Reasonably Related To Legitimate Penological Interests**

Even if Plaintiff had demonstrated that the lack of Friday Jumu'ah prayer services in May and June 2019 constituted a substantial burden on his religious practice, Plaintiff's claim still fails.  The Defendants have demonstrated that the restriction was reasonably related to a legitimate penological interest such that the interference does not violate the Constitution.  Turner, 482 U.S. at 89.

To determine whether the restriction was reasonably related to a legitimate penological objective, the Court considers four factors as set forth in Turner:

(1) Whether there is a valid, rational connection between the restriction and the legitimate government interest put forward to justify it;

(2) whether there are alternative means of exercising the right that remain open to prison inmates;

(3) whether accommodation of the asserted constitutional right would have a significant impact on guards and other inmates; and,

(4) whether ready alternatives are absent (bearing on the reasonableness of the restriction).

Pierce v. Cnty. of Orange, 526 F.3d 1190, 1209 (9th Cir. 2008) (citing Turner, 482 U.S. at 89)).

The task in considering the four Turner factors is not to balance the factors but to determine overall whether the defendant demonstrates a reasonable relation between the restriction and a legitimate penological objective.  Beard v. Banks, 548 U.S. 521, 533 (2006).

First, the correctional facility put forth a valid, rational

18

reason for the interruption in Friday Jumu'ah prayer services. The Plaintiff was informed in response to an administrative grievance that the interruption of the Jumu'ah prayer services in May 2019 was due to staff shortages.  (Department of Public Safety Remedy Form dated July 2, 2019, attached as Ex. B to Def.'s CSF, ECF No. 46-6).

It is well established that the unavailability of prison personnel to supervise or administer religious services is a legitimate penological purpose that may justify restricting access to religious worship.  O'Lone, 482 U.S. at 352-53; Crime Just. & Am., Inc. v. Honea, 876 F.3d 966, 975 (9th Cir. 2017); Anderson v. Angelone, 123 F.3d 1197, 1198-99 (9th Cir. 1997).

Second, the undisputed record demonstrates that Plaintiff was afforded alternative opportunities to practice his religion.

The record demonstrates that Halawa Correctional Facility accommodates Muslim religious practices including providing non-pork options, special arrangements for meal services during Ramadan, and having a volunteer Imam, when available, to meet with inmates.  (Kaplan Decl. at ¶¶ 5, 9, ECF No. 46-2).  Inmates may engage in individual religious practices to personally and openly pray, meditate, worship, study, use religious books, observe religious holidays, and socialize with others for prayer or religious discussions.  (Id.)

Plaintiff acknowledges that he was provided with Muslim religious items to facilitate his religious practice, including a Qur'an, a prayer rug, and a kufi (religious headwear).  (Long

19

Decl. at ¶¶ 5, 18-19, ECF No. 71-1; Pl.'s CSF at 34, ECF No. 71). Plaintiff asserts that there were some issues with meal service, but Plaintiff was able to attend some Friday Jumu'ah prayer services, to pray daily, to otherwise participate in the month of Ramadan, and to read from the Qur'an.  See Liggins, 2023 WL 2529751, at *5.

Third, accommodating Plaintiff's request for Friday prayer services when there was a staff shortage would have adversely affected the allocation of prison resources and raised security concerns.  This factor weighs in favor of the restriction.  When an accommodation of a particular religious practice has a "ripple effect" on fellow inmates or prison staff, courts must be particularly deferential to the decisions of the correctional staff.  Irvin v. Yates, 2017 WL 3503465, at *17 (E.D. Cal. Aug. 16, 2017), report and recommendation adopted, 2018 WL 10638225 (E.D. Cal. Apr. 30, 2018), aff'd, 783 Fed. Appx. 695 (9th Cir. 2019).

An inmate who adheres to a religion must be afforded a reasonable opportunity to exercise his religious beliefs, but a prison is not required to have identical facilities or personnel for every religious sect or group.  Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972); see Ward v. Walsh, 1 F.3d 873, 880 (9th Cir. 1993).

Fourth, Plaintiff has not pointed to any reasonable alternatives that would have easily accommodated his request that would not have impacted the prison's legitimate penological

objective for the restriction.  <u>Irvin</u>, 2017 WL 3503465, at *17.

Consideration of all of the <u>Turner</u> factors as a whole demonstrates that there was no violation of Plaintiff's First Amendment rights.  The temporary disruption in Friday Jumu'ah prayer services in May and June 2019 was short-term and sporadic. The Defendants have demonstrated that the interruption, due to staff shortages, was for a legitimate penological purpose.  The undisputed facts in the record demonstrate that Plaintiff had alternative means of practicing his religion.  <u>See</u> <u>O'Lone</u>, 482 U.S. at 349.  The First Amendment does not require prisons to accommodate all inmates' requests even if important to their religious practice.  <u>Hartmann</u>, 707 F.3d at 1122 (explaining that prisons are not required to provide inmates with their chosen chaplains); <u>Nazarazi v. Cnty. of Orange</u>, 845 Fed. Appx. 559, 559-60 (9th Cir. 2021) (finding no constitutional violation where prisoner was not allowed to attend chapel on a weekly basis but was provided access to other religious services).

Defendants' Motion for Summary Judgment (ECF No. 45) is **GRANTED.**

## III. **Qualified Immunity**

A defendant in a Section 1983 lawsuit is entitled to qualified immunity when his conduct does not violate clearly established constitutional rights of which a reasonable person would have known.  <u>Kisela v. Hughes</u>, 138 S.Ct. 1148, 1152 (2018)

(citing White v. Pauly, 580 U.S. 73, 78-79 (2017) (per curiam)).
Clearly established law exists when the contours of a right are
sufficiently clear that every reasonable person would have
understood that what he is doing violates that right.  Ashcroft
v. al-Kidd, 563 U.S. 731, 741 (2011) (citing Anderson v.
Creighton, 483 U.S. 635, 640 (1987)).

The determination whether a right was clearly established
must be undertaken in light of the specific context of the case,
not as a broad general proposition.  Pearson v. Callahan, 555
U.S. 223, 232 (2009).  The precedent establishing this right must
place the question beyond debate.  al-Kidd, 563 U.S. at 741.  The
inquiry is case specific but it is not so narrowly defined to
preclude any potential claims without identical fact patterns.
Kelley v. Borg, 60 F.3d 664, 667 (9th Cir. 1995).

Generally, courts follow a two-part inquiry in determining
if a government official is entitled to qualified immunity.

One, a court must decide whether the facts that a plaintiff
has demonstrated make out a violation of a constitutional right.
Pearson, 555 U.S. at 232.

Two, the court must decide if the right at issue was clearly
established at the time of defendant's conduct.  Id.

The two factors can be considered in any order.  Id. at 236.

Here, the Court has already found that there was no
violation of Plaintiff's rights pursuant to the Free Exercise
Clause of the First Amendment.

Even if there was a violation, Defendants Antonio and

22

Harrington are entitled to qualified immunity.  There is no evidence of the personal participation by either Defendant Antonio or Defendant Harrington.  In addition, it was not clearly established in May and June 2019, or now, that the acts by the Defendants constituted a violation of the Free Exercise Clause to the First Amendment.

It is the plaintiff who bears the burden of showing that the rights allegedly violated were clearly established.  <u>Shafer v. Cnty. of Santa Barbara</u>, 868 F.3d 1110, 1118 (9th Cir. 2017).

Plaintiff has not cited any controlling law clearly establishing that Defendants' temporary failure to provide regular staff supervision for Plaintiff's religious services for one month during Ramadan between May and June 2019 was unconstitutional.

To the contrary, in May and June 2019, the law was clearly established that while prisoners had First Amendment rights to attend religious services, such rights were subject to reasonable regulation, including for legitimate penological purposes such as staff shortages.  <u>See</u> <u>O'Lone</u>, 482 U.S. at 350-53; <u>Anderson</u>, 123 F.3d at 1199.

As there was no controlling law that would have notified Defendants that their actions were unconstitutional as of May and June 2019, Defendants are entitled to qualified immunity.

Defendants' Request for Qualified Immunity is **GRANTED.**

## CONCLUSION

Defendants' Motion for Summary Judgment (ECF No. 45) is **GRANTED.**

Defendants' Request for Qualified Immunity is **GRANTED.**

There are no remaining claims or parties herein.

The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and to close the case.

IT IS SO ORDERED.

DATED: August 16, 2023, Honolulu, Hawaii.

Helen Gillmor
United States District Judge

De Witt Lamar Long v. Chief of Security Lyle Antonio; Warden Scott O. Harrington, Civ. No. 21-00205 HG-RT, **ORDER GRANTING DEFENDANTS LYLE ANTONIO AND SCOTT HARRINGTON'S MOTION FOR SUMMARY JUDGMENT AS TO ALL CLAIMS IN PLAINTIFF'S FIRST AMENDED COMPLAINT (ECF No. 45) and GRANTING DEFENDANTS' REQUEST FOR QUALIFIED IMMUNITY**